UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANKIE HARPER )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>RELIANCE STANDARD LIFE )<br>INSURANCE COMPANY )<br>      Defendant. ) | Cause No. 07 C 3508<br><br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Plaintiff Frankie Harper ("Harper") filed a complaint alleging that Reliance Standard Life Insurance Company ("Reliance") violated the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically 29 U.S.C. §§1132(e)(1) and 1132(f), in the course of administering an employee welfare benefit plan on behalf of Harper's employer, Michael Reese Hospital. Harper and Reliance have each filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set out herein, Harper's motion is granted, and Reliance's motion is denied.

## PROCEDURAL BACKGROUND

Harper's Complaint alleges that Reliance wrongfully denied her claim for long-term disability benefits, thus denying her plan benefits. [Dkt 1.] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c)(1) and Local Rule 73.1. [Dkt 16, 17, 18.]

# FACTUAL BACKGROUND

Frankie Harper was employed as a Medical Surgical Registered Nurse at Michael Reese Hospital when she was involved in a car accident outside of work that injured her back and shoulder. (Pl. Facts ¶ 7.)[1] Harper was covered by a group long-term disability insurance plan sponsored by Michael Reese Hospital. (Pl. Facts ¶ 8.) The plan purchased a disability insurance policy, underwritten and administered by Reliance, Policy No. LTD 108647 ("the Policy"). (Pl. Facts ¶ 8.) The Policy was part of an "employee welfare benefit plan" as defined in 29 U.S.C. § 1002(1), and Harper was a "participant," as defined in 29 U.S.C. § 1002(7). (Pl. Facts ¶ 9.)

## **The Policy Provisions**

The Policy includes the following relevant provisions:

---

[1] The parties' respective Local Rule 56.1 statements and responses are cited as follows: Plaintiff's Statement of Facts Submitted Pursuant to Local Rule 56.1 will be referred to as "Pl. Facts ¶__" [dkt 20]; Defendant's Response to Plaintiff's Statement of Facts, and Defendant's Counter Statement of Facts Pursuant to Local Rule 56.1 will be cited as "Def. Resp. ¶ __" and "Def. Counterfacts ¶ __" [dkt 27], respectively. Plaintiff's Response to Defendants' [sic] Statement of Additional Material Facts in Support of their [sic] Motion for Summary Judgment will be referred to as "Pl. Resp. Facts ¶ __." [Dkt 28.]
Reliance's responses to Harper's Local Rule 56.1 statements fail to comply with Local Rule 56.1 and are otherwise deficient in a variety of ways, including numerous typographical errors making it difficult to determine exactly what Reliance intended to say. For example, Def. Resp. ¶ 7 at page 2 responds simply "undisputed," but Reliance mistakenly recites Harpers's ¶ 7 a second time on that page, and this time partially disputes the statement. (*See also* Def. Resp. ¶ 8 at pages 2-3.) Reviewing both responses, the court finds ¶¶ 7-8 admitted. More importantly, Reliance did not provide any explanation why it disputed a number of Harper's 56.1 statements, instead responding repeatedly that a given medical record cited by Harper "speaks for itself," presumably leaving the court to examine each document and to guess why Reliance disputed Harper's characterizations of its contents. (*See e.g.* Def. Resp. ¶¶ 13-44.) During argument on the parties' summary judgment motions, counsel for Reliance was unable to state specifically why Reliance disputed any statement of Harper's facts. Accordingly, Harper's characterizations of the medical facts are deemed uncontested.

> INSURING CLAUSE: We will pay a Monthly Benefit if an Insured:
> (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy;
> (2) is under the regular care of a Physician;
> (3) has completed the Elimination Period; and
> (4) submits satisfactory proof of Total Disability to us.

(AR 107.)[2]

> "Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:
>
> (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the *material duties of his/her regular occupation* . . . .

(AR 99, emphasis added.)

The "Elimination Period" is "a period of consecutive days of Total Disability, as shown on the Schedule of Benefits page, for which no benefit is payable. It begins on the first day of Total Disability." (AR 98.) In other words, in order for Harper to receive benefits, she must be unable to perform the material duties of her regular occupation for the duration of the Elimination Period. For 24 months thereafter, she is eligible to receive benefits if she continues to be unable to perform the material duties of her regular occupation.[3]

The Policy also provides the following under "PAYMENT OF CLAIMS":

> When we receive written proof of Total Disability covered by this Policy, we will pay any benefits due. . . .

---

[2] The Administrative Record ("AR") in this matter was filed in full by both parties. For convenience, this opinion refers to the first AR filed, which was filed by Harper. [Dkt 24.] All AR citations throughout are to that docket number.

[3] Reliance sent a letter to Harper on January 31, 2006, in which it stated that her Elimination Period was 90 days, although it also set out the start and end dates of a 180-day period. (AR 42-43.) In her statement of facts, Harper states that the Elimination Period is 180 days, and Reliance does not contest that. (Def. Resp. ¶ 68.) The court accepts the uncontested 180-day period as the Elimination Period.

3

> Reliance Standard Life Insurance Company shall serve as the claims review fiduciary with respect to the insurance policy and the Plan. The claims review fiduciary has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits. Decisions by the claims review fiduciary shall be complete, final and binding on all parties.

(AR 103.)

**Claim Background**

Even prior to the accident in February 2005, Harper had a history of medical problems extending back to 1990. (Pl. Facts ¶¶ 13-44.) Her records reveal that Harper received treatment for degenerative changes in her knees, shoulders and back, as well as for hip pain. (Pl. Resp. Facts ¶ 6.) Harper's records also describe a variety of other diagnoses, such as lupus, coronary artery disease, chronic or congenital heart failure, diabetes, chronic obstructive pulmonary disease, and hypertension, all of which she had lived with prior to her car accident. (Pl. Resp. Facts ¶ 13.)

Harper stopped working on February 11, 2005, the day of the accident, and three days later applied for Social Security benefits. (Pl. Facts ¶¶ 45-46.) On July 1, 2005, Harper applied for long-term disability benefits from Reliance, claiming "severe low back pain and bilateral shoulder pain." (AR 132-135.)[4] Elsa Perez, Benefits Administrator at Michael Reese Hospital, filled in the employer section of Harper's application, including writing "see job description" for the description of Harper's occupation as a Medical Surgical Registered Nurse. (Def. Resp. Facts ¶ 48.) The "job description" is a Michael Reese Hospital document summarizing the requirements and qualifications for a Medical Surgical Registered Nurse. (AR 189-195.) It included a "Physical Effort" category,

---

[4]Harper states that she claimed right hand pain in addition to low back and shoulder pain. (Pl. Facts ¶ 47.) However, neither AR 132-133 nor Plaintiff's Complaint ¶ 8, both cited in Pl. Facts ¶ 47, describe right hand pain.

4

stating: "This position requires the ability to lift up to 50 lbs. Maximum with frequent lifting and/or carrying of objects weighing up to 25 lbs. is required. [sic] Stooping, kneeling, reaching and manual dexterity required. . . . The job requires 10% sitting and 90% standing or walking. . . . [S]tands or walks a good portion of the work time . . . . Must be able to move patients using proper body mechanics. Fine motor skills required." (AR 192.)

Harper's job duties required physical capabilities that she did not have after the accident, according to her treating physician Dr. Farmer. (*See* AR 421-22.) Harper submitted Dr. Farmer's evaluation along with other records and documents to Reliance as part of her claim.[5] Dr. Farmer, the only doctor who evaluated her for those purposes, set forth Harper's physical restrictions after the accident in an Attending Physician's Statement, dated July 1, 2005. (*Id*.) He stated, in part, that in an eight hour day with two breaks and lunch, Harper could carry a maximum of ten pounds and occasionally carry small objects, and that she could not bend or squat at the waist. (*Id*.) Harper was capable of sitting or driving for one to three hours, could not stand or walk, and could not use her upper extremities for simple grasping, for pushing or pulling, or for fine manipulation. Harper also could not climb or reach above her shoulder, could not kneel, crawl or use her feet to operate foot controls. (Def. Resp. ¶ 51; AR 422.) Dr. Farmer wrote that Harper would indefinitely be restricted. (*Id*.)

Reliance's review of Harper's application is set out in a form titled Medical/Vocational Review. (AR 408). The top portion provides that it is "[t]o be completed by the Examiner," and the second portion of the page is "[t]o be completed by the Medical Department." (*Id*.) The Medical

---

[5]It is unclear in some instances which records were submitted to Reliance at which stage of Harper's claims process, but they are part of the Administrative Record submitted by both parties.

Department portion is dated November 17, 2005, and states in the "Other comments" section:

> Claimant is status post motor vehicle accident at the date of loss with normal x-rays, only records on file do not support impairment[,] they are infrequent in nature[,] and while difficult to decipher[,] appear to refer to routine medical care. Normal recovery for this injury would be 2-6 weeks. The medical opinion provided is based on the data available as of this date. The signature below asserts that I have the training and experience in the area of nursing practice encompassed in this review.

(*Id.*) There is no signature on the form, although the name "Marianne P. Lubrecht BSN, RN" is typed below the statement. (*Id.*)[6]

On January 31, 2006, Reliance notified Harper that it denied her claim for long-term disability benefits because her medical records did not support impairment beyond the end of the Elimination Period. (AR 42-44.) Reliance's letter stated:

> Your group policy states that no benefits are payable for the first 90 [sic] days of disability. Because you were first unable to perform your occupation on February 11, 2005 your 90 [sic] day elimination period would expire on August 10, 2005. Provided that all other policy provisions are met, an Insured is eligible for benefits only if he or she remains disabled throughout the Elimination Period.
>
> Dr. Farmer provided medical records in regard to your thoracic disc disease/severe back and shoulder pain and based on our review of the medical records, we conclude that the records do not support your disability through August 10, 2005. The medical records in your file indicate that you treated with Dr. Farmer on February 11, 2005 post motor vehicle accident at the date of loss with normal x-rays and routine medical care. The normal recovery for this injury would be 2-6 weeks. In addition, we requested medical records from Dr. Tartoff's office in which his office replied, "the patient was last seen in our office June 2002." Based on this information we were unable to assess your disability through the Elimination Period, which was August 10, 2005.
>
> The final determination to deny your claim is based primarily on the lack of sufficient

---

[6]Although Reliance disputes Harper's Local Rule 56.1 statement that "Marianne P. Lubrecht, BSN, RN, an employee of Reliance" made the comments quoted from the Medical/Vocational Review, Reliance provides no explanation of its denial, and cites no evidence other than AR 408. (Def. Resp. ¶ 52.) Harper's statement is deemed admitted.

medical evidence to support continuing disability through the Elimination Period. (AR 43.)

On November 29, 2006, Harper appealed Reliance's decision (AR 29-32).[7] With the appeal, Harper submitted a letter from Diana Warren-King, a co-worker of Harper's, who described Harper's difficulty with everyday physical nursing tasks. (AR 33.) Ms. Warren-King wrote that she had worked with Harper for "a number of years," and that Harper's duties had become "very hard" for her to perform, including general patient care. (*Id*.) Ms. Warren-King wrote that Harper needed assistance from the staff nurses even for making a bed. (*Id*.) On January 19, 2007, Reliance responded to Harper by letter that it would have the records reviewed by an "outside, independent physician." (AR 23.) Reliance wrote:

> We are required to make a decision within 45 days of the date the appeal is received but are allowed an additional 45 days if circumstance [sic] do not permit us to make a decision within the initial 45 day timeframe. Please allow this letter to serve as notice of our intention to take beyond 45 days to make a final decision on her appeal.

(*Id*.) Reliance was presumably alluding to 29 C.F.R. § 2560.503-1(i)(1)(i) and (i)(3)(i)), which provide:

> Except as provided in paragraphs (i)(1)(ii), (i)(2), and (i)(3) of this section, the plan administrator shall notify a claimant in accordance with paragraph (j) of this section of the plan's benefit determination on review within a reasonable period of time, but not later than *60 days after receipt of the claimant's request for review* by the plan . . . . If the plan administrator determines than an extension of time for processing is required, written notice of the extension shall be furnished to the claimant prior to the termination of the initial 60-day period. *In no event shall such extension exceed a period of 60 days from the end of the initial period.*

---

[7]The appeal was made on behalf of Harper by her attorney, who wrote a letter that refers to "attached reports." (AR 29-32.) However, the copy of the letter included in the AR filed with the court does not have reports attached to the letter. The AR includes only Diana Warren-King's letter with the appeal letter. (AR 33.)

29 C.F.R. § 2560.503-1(i)(1)(i) (emphasis added).

> Except as provided in paragraph (i)(3)(ii) of this section, claims involving disability benefits (whether the plan provides for one or two appeals) shall be governed by paragraph (i)(1) of this section, *except that a period of 45 days shall apply instead of 60 days for purposes of that paragraph.*

29 C.F.R. § 2560.503-1(i)(3)(i) (emphasis added).

Anthony Margherita, M.D., reviewed Harper's medical records at Reliance's request. (AR 19.) Dr. Margherita issued a report and a supplemental review and report, both undated. (AR 20-22.) In his first report, he observed that the records he reviewed began in June 2004, although "a fair amount of the records [we]re unreadable." (*Id.* at 20.) Dr. Margherita stated that there were no Emergency Room or other records of immediate care for injuries following the accident and "[t]here is no [accident] damage information available." (*Id.*) He did acknowledge that there were records of "x-rays that were done at the request of the claimant's primary physician, Dr. Farmer." (*Id.*)[8] He stated further, "Specifically, there is no documentation relating to any specific examination findings to objectify the claimant's report of limitations." (*Id.*) He wrote the following "OPINIONS/CONCLUSIONS":

> I was asked to offer my opinions regarding the status of the claimant and her reported disability. The claimant's original films of 2/11/05 demonstrated degenerative changes that [sic] clearly pre-existent and were not causing functional limitations prior to the MVA. This is inconsistent with the presence of functionally limiting and progressive joint/disk degeneration. Therefore, her disability cannot be determined by her radiographic findings. There are no medical records that identify an objective finding based on either musculoskeletal or neurological examination that would identify a cause for ongoing and total disability. Her complaints of back pain are not consistent with any specific abnormality.

---

[8]A review of Harper's medical records does not reveal a referral for those x-rays by Dr. Farmer. (AR 366-367.)

> There is no justification for the presence of a permanent and total disability. Based on the findings described and reported in the FCE forms, *this claimant should be at least capable of working in a sedentary or administrative capacity.* If necessary to further adjudicate this claim, I would recommend the performance of a formal functional capacity examination under the direction of a trained therapist in order to determine the claimant's capacity and any concurrent behavioral manifestations.

(*Id.* at 20-21, emphasis added).

Dr. Margherita's Supplemental Review and Report stated that he had received "[a]dditional records," which showed diagnoses for systemic lupus, osetoarthritis, and "non-disabling depression," and which set forth the medications prescribed for Harper. (AR 22.) Dr. Margherita wrote that:

> I was asked to provide my opinions or any changes to the opinions I previously offered regarding this claimant. From the records provided, there is no new information that would alter my opinions. These records provide background information regarding the claimant's medical status but do not offer additional information regarding her current functional status.

(*Id.*)

On April 9, 2007, more than 90 days after the submission of Harper's appeal, Reliance requested a Functional Capacities Evaluation ("FCE"). (AR 19.) On April 12, 2007, Harper refused to submit to the FCE, saying it was "unlawful" and "unreasonable" for Reliance to request it because the 90 day period had passed during which Reliance was required to render a decision, and, further, she objected to the "reliability" of the FCE testing. (AR 17.). Reliance then requested an Independent Medical Examination ("IME") on April 19, 2007. (AR 15.) That same day, Harper refused to submit to the IME, stating that "the maximum time for resolving an ERISA appeal has already been exhausted (90 days since we submitted our appeal on November 29, 2006), the claim is deemed denied and we are ready to file suit unless we are immediately informed that benefits have been approved." (AR 7.) Having received no denial or approval, on May 31, 2007, Harper submitted three pages of additional medical records showing that she had received a lumbar epidural

9

steroid injection for pain, and was scheduled for another injection in June 2007. (AR 10-11.)

On June 18, 2007, Reliance upheld its benefit denial, stating that:

> Harper has a contractual obligation to provided [sic] proof of total disability satisfactory to us. We have determined that an IME is necessary to satisfy this policy requirement and, as also noted earlier, the policy grants us the right to obtain such an exam. Your client's refusal to cooperate with our request for the IME deprives us of the opportunity to evaluate her complaints and their impact on work function. We submit that, in declining to undergo the IME, Ms. Harper has failed to meet the burden of proof mandated by her policy and that, therefore, we have no alternative but to deny her appeal.

(AR 4.) Harper filed this lawsuit three days later.

## LEGAL STANDARD

Both parties moved for summary judgment. On a motion for summary judgment, the moving party must show that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court may not make credibility determinations, "choose between competing inferences" or weigh the evidence. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005). Rather, when the court is examining cross-motions, "our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made." *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir. 2007) (internal citations omitted).

A lawsuit brought pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)) to enforce benefits rights is an assertion of contractual rights. *Tolle v. Carroll Touch, Inc.,* 977 F.2d 1129, 1133 (7th Cir. 1992). "[T]o enforce the terms of a plan under Section 502, the participant must first qualify for the benefits provided in that plan." *Id*. at 1134.

The court reviews a denial of benefits *de novo* unless the benefit plan gives the administrator

discretionary authority to determine eligibility of benefits or to construe the plan's terms. *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321 (7th Cir. 2007). Where the administrator has such discretion, the court reviews a denial of benefits under the arbitrary and capricious standard. *Id*. It is uncontested in this case that the plan grants discretionary authority to Reliance "to interpret the Plan and the insurance policy and to determine eligibility for benefits." (AR 103).

The arbitrary and capricious standard, according to the Seventh Circuit, "is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan." *Trombetta v. Cragin Fed. Bank for Savings Employee Stock Ownership Plan*, 102 F.3d 1435, 1438 (7th Cir. 1996). "[T]he administrator's decision will only be overturned if it is 'downright unreasonable.'" *Williams*, 509 F.3d at 321 (internal citation omitted).

> Despite the deferential nature of this standard however, it "is not a rubber stamp" and a denial of benefits will not be upheld "when there is an absence of reasoning in the record to support it." . . . Therefore this court will uphold the Plan's determination "as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem."

*Id*. at 321-22 (internal citations omitted). "To constitute a full and fair review under 29 U.S.C. § 1133(2), all the evidence that [Harper] submitted should have been considered by [Reliance]." *Semien v. Life Ins. Co. of N.A.,* 436 F.3d 805, 812 (7th Cir. 2006) (parenthetical omitted).

## DISCUSSION

Harper asserts that Reliance's denial of her appeal was arbitrary and capricious, making two

arguments.[9] First, Harper argues that Reliance's denial of her appeal was substantively incorrect because Reliance's reviewing doctor, Dr. Margherita, stated his opinion based upon Harper's ability to work in at least a sedentary capacity rather than in the capacity required by her specific occupation. Relatedly, Harper also argues that to the extent that Reliance's decision relied on the opinion of Marianne Lubrecht, it failed to take into consideration all of the medical records and history submitted on Harper's behalf, and failed to make a specific analysis of Harper's individual medical situation. Second, Harper argues that Reliance's review was procedurally incorrect to the extent that it relied on Harper's refusal to undergo examinations after the ERISA deadline for Reliance's response to Harper.

Reliance argues that Harper's medical records did not support the disability she claimed. Reliance states that it provided all of Harper's medical records to Dr. Margherita, and that he was not "selective" in what he reviewed. Reliance also argues that its request for the FCE and the IME were both appropriate, because pursuant to the Policy provisions, it has the right to request an examination "while a claim is pending." (Def. Mem. in Opp. at 11.) Reliance asserts that when Harper submitted extra documents after the 90 day period, she "kept the appeal period open." (*Id*. at 10.)

**I.**     ***The Regular Occupation Provision***

The Policy provides that "'Totally Disabled' and 'Total Disability' mean, that as a result of an Injury or Sickness: (1) during the Elimination Period and for the first 24 months for which a

---

[9]Harper's argument focuses mostly on her appeal, but also addresses the denial of her original claim.

Monthly Benefit is payable, an Insured cannot perform the material duties of *his/her regular occupation. . . .*" (AR 99, emphasis added). The "regular occupation" provision is significant; it protects Harper by requiring only that she be disabled from performing her material job duties, rather than *any* job at all.

As discussed above, Dr. Margherita's evaluation summarized some of Harper's records and her recent medical history. (AR 20.) He concluded, in part, that "this claimant should be at least capable of working in a sedentary or administrative capacity." (*Id*. at 21.) Dr. Margherita did not address the physical requirements of Harper's regular occupation, nor base his conclusion upon Harper's actual job responsibilities, which included lifting up to 50 pounds with frequent lifting and/or carrying of objects up to 25 pounds, among other requirements. (AR 192.)

Reliance's denial of Harper's appeal cited the proper Policy provision regarding Harper's "regular occupation," but the denial was based upon a job description provided by the Dictionary of Occupational Titles (DOT) rather than the actual job requirements described by Harper's employer. (AR 2.)[10] Significantly the job descriptions are different; Reliance relied upon the DOT description for "Nurse, General Duty" rather than Harper's title, which is "Medical Surgical Registered Nurse." (AR 2, 190, 196-97.)[11] The DOT describes the "Nurse, General Duty" position as involving medium level work, requiring exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force

---

[10] According to Reliance, the appropriate job description at issue is published by the Department of Labor (AR 2); however, the job description in the AR indicates only that it is issued by the DOT. (AR 196-97.)

[11] Reliance disputes Harper's 56.1 statement regarding her Michael Reese job description, and states that the Department's Job Description "speaks for itself." (Def. Resp. ¶ 49.) That response informs neither the court nor Harper what is disputed about Harper's ¶ 49, nor is it persuasive as to why the DOT job description is more appropriate than the description drafted by the employer itself. (*See* AR 196-197.)

frequently, and/or up to 10 pounds of force constantly. (AR 196-97.) The job description for Harper's position at Michael Reese Hospital entails more physical labor than the DOT description, such as the ability to lift up to 50 pounds, with frequent lifting of up to 25 pounds, as well as a requirement of standing 90% of the day. (AR 192.) The question of the physical effort required by Harper's job, and her ability to do that work, is at the heart of this case.

Harper's treating physician, Dr. Farmer, specifically evaluated Harper's physical abilities in his Attending Physician's Statement, stating, in part, that in an eight hour day with two breaks and lunch, Harper could carry a maximum of ten pounds and occasionally carry small objects, and that she could not bend or squat at the waist. (AR 422.) Harper was capable of sitting or driving for one to three hours, could not stand or walk, and could not use her upper extremities for simple grasping, for pushing or pulling, or for fine manipulation. (*Id.*)

By stating that Harper "should be at least capable of working in a sedentary or administrative capacity," Dr. Margherita failed to address the reality of Harper's "own occupation;" her job was neither sedentary nor administrative. Reliance then incorrectly based its denial of Harper's appeal on Dr. Margherita's assessment and the wrong DOT job description that did not accurately describe Harper's job. But even that DOT description does not use terms such as "sedentary" or "administrative." (AR 196-97.) The DOT describes the physical demands of the "Nurse, General Duty" position as requiring "medium" strength. (AR 197.) Even viewing all inferences in favor of Reliance, Reliance's review and denials did not consider Harper's actual job requirements, and, accordingly, Reliance did not provide a reasoned explanation for the denial of her claim. *See Williams*, 509 F.3d at 321-22.

**II.**     *The Statutory Time Frame*

Harper also argues that Reliance's denial of her appeal was improper because it was based, at least in part, on Harper's refusal to submit to additional testing after the deadline for Reliance's decision. As described above, the ERISA regulations set out a specific time frame for deciding an appeal. 29 C.F.R. § 2560.503-1(i)(3)(i) provides 45 days for the administrator to make a determination on a review, and provides one 45-day extension of time if needed. In no event shall the extension exceed 45 days. *Id.*[12] 29 C.F.R. § 2560.503-1(i)(4) provides that the clock begins to run when the appeal is filed, "without regard to whether all the information necessary to make a benefit determination on review accompanies the filing." Although "substantial compliance" with applicable regulations is sufficient, a significant procedural error can require that, in fairness, the administrator's decision be set aside. *Halpin v. W.W. Grainger, Inc*. 962 F.2d 685, 690 (7th Cir. 1992).

A number of courts have found that the administrator's failure to comply with ERISA deadlines could not be considered substantial compliance with the regulations. For example, in *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003), the Tenth Circuit held, after reviewing cases from other circuits, that when the administrator's delay in deciding a claim results in its being "deemed denied," the court must review the denial *de novo*, even if the plan grants the administrator discretionary authority to decide claims. In that case, the administrator never rendered a decision on the claimant's appeal. Instead, well after the time when the deadline would have run for deciding the appeal, the administrator requested additional information. Although *Gilbertson*

---

[12]The 60 day extension set by 29 C.F.R. § 2560.503-1(i)(1) is only 45 days for long-term disability decisions. 29 C.F.R. § 2560.503-1(i)(3)(i).

was decided under an earlier version of the regulations, which no longer contain the "deemed denied" provision (*Reeves v. Unum Life Ins. Co. of Am.*, 376 F. Supp. 2d 1285, 1293 (W.D. Okla. 2005)), the court's comments in *Gilbertson* about the deadlines remain apt. While rejecting a "hair-trigger rule," the court said that "[i]t would be manifestly unfair to claimants if plan administrators could extend the process indefinitely by continually requesting additional information. The deadlines therefore empower the claimant to call a halt to the evidence-gathering process and insist on an up or down decision on the record as it stands." *Gilbertson*, 328 F.3d at 635, 636.

Similarly, in *Sidou v. Unumprovident Corp.*, 245 F. Supp. 2d 207 (D. Me. 2003), the court held that a claimant had exhausted her administrative remedies and was entitled to bring suit, even though the claimant had refused to submit to an additional examination that was requested by the administrator after the time for deciding the claimant's appeal.

> Although the rules of administrative claim review are sufficiently loose to permit supplementation of the record during the course of a review, it is simply unreasonable to request that a claimant submit to medical examination *after* the applicable deadline for ruling on her appeal has expired when the sole reason for the independent medical examination can only be to supplement a final decision that has already been made.

245 F. Supp. 2d at 216 (emphasis in original).

In *Tomassi v. Prudential Ins. Co. of Am.*, 2007 WL 1772117 (N.D. Ill. June 19, 2007), the court held that the claimant had fulfilled his duty to exhaust his administrative remedies by filing his lawsuit 45 days after the initial appeal, where the administrator failed to notify the claimant that it would need additional time. The court rejected the administrator's argument that the clock restarted when the claimant submitted updated medical records that were not available when he filed the appeal. Such an approach would allow insurers to extend the time for decision endlessly and discourage claimants from submitting updated information. *Id.* at *4.

It is questionable whether the administrator has a right to request an independent medical examination *during* the consideration of an appeal from a denial of benefits.[13] But Reliance has not cited, nor has the court's research disclosed, any cases upholding an insurer decision to deny an appeal because the claimant refused to submit to an examination *after* the time limit for the insurer's decision on the appeal. *Bali v. Blue Cross and Blue Shield Ass'n*, 683 F. Supp. 1220, 1224 (N.D. Ill. 1988), *aff'd* 873 F.2d 1043 (7th Cir. 1989), cited by Reliance, is inapposite. The claimant in *Bali* repeatedly refused to provide reasonable information requested by the administrator of the plan as part of its re-evaluation of the claimant's continuing entitlement to long-term disability benefits. The court affirmed the denial of benefits, and upheld the administrator's right to make reasonable requests for information. 683 F. Supp at 1223; 873 F.2d at 1047. There was no issue about the timing of the administrator's requests.[14]

The reasoning of the cases discussed above is persuasive here. Reliance was required to decide Harper's appeal by the deadline established by the ERISA regulations. The Policy provision that allows Reliance "the right to have a Claimant interviewed and/or examined . . . while a claim is pending" (AR 103), does not allow Reliance to determine that a claim is "pending" simply because Reliance has not yet decided it.

---

[13] *See e.g. Williams v. Group Long Term Disability Ins.*, 2006 WL 2252550 at *8 (N.D. Ill. Aug. 2, 2006) (stating that such requests are viewed by courts "in a negative light," and holding that the insurer acted unreasonably in requesting an examination during appeal when the need for one was apparent earlier); *see also Neiheisel v. Ark Steel Corp.,* 2005 WL 1077593 at *9 (S.D. Ohio Feb. 17, 2005) (stating that ERISA regulations do not permit the administrator to require an examination that would bring new information into the record at the appeal stage).

[14] In addition, the continuing authority of *Bali* is questionable because the Seventh Circuit later expressly disapproved the standard of review applied there. *See Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 640 (7th Cir. 2005).

Reliance's argument that Harper's submission of three pages of medical records about a subsequent procedure allowed Reliance to request additional medical examinations is contrary to the facts. The deadline for Reliance to decide the appeal expired at the end of February 2007. Reliance requested the FCE on April 9, and the IME on April 19, 2007. Harper's additional medical records documents were provided to Reliance at the end of May 2007. Reliance's failure to render a decision in February and its requests for additional tests in April could not have been prompted by Harper's submission of documents in May. Reliance's argument that Harper's submission of those three pages of updated records allowed Reliance to restart the clock for its decision is rejected for the reasons expressed by the court in *Tomassi*.

To the extent Reliance's decision to deny Harper's appeal was based upon Harper's refusal to undergo the FCE or IME that was requested after the time in which Reliance was to have decided Harper's appeal, that decision was arbitrary and capricious. Accordingly, Harper's motion for summary judgment is granted, and Reliance's motion for summary judgment is denied.

**III.**   *Remedy*

Harper's Complaint requests that the court determine that Harper is entitled to benefits and order the Plan to pay disability benefits to her, along with interest and attorneys' fees. When "the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground," the court may order the payment of benefits. *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 464 (7th Cir. 2001) (internal quotations and citation omitted). However, in deciding the remedy, the court should consider whether the claimant had been initially determined to be entitled to benefits. *Hackett v. Xerox Corp. Long-Term Disability Income Plan*,

315 F.3d 771, 775-776 (7th Cir. 2003). Where, as here, the issue is an inadequate procedure on initial denial of benefits, the remedy is generally to remand to the administrator.

> In a case where the plan administrator did not afford adequate procedures in its initial denial of benefits, the appropriate remedy respecting the status quo and correcting for the defective procedures is to provide the claimant with the procedures that she sought in the first place. . . . If the claimant prevails on remand before the plan administrator, then the claimant would be entitled to retroactive benefits from the time at which the initial denial occurred. . . . However the court is not in the place to make the determination of entitlement to benefits. The court must not substitute its own judgment for that of the administrator.

315 F.3d at 776 (internal citations omitted).

After carefully considering the issue, the court concludes that the appropriate course in this case is to remand Harper's claim to the administrator to conduct a new review of her eligibility, applying the proper standards consistent with this opinion.

## CONCLUSION

For the reasons stated above, Reliance's motion for summary judgment is hereby **denied**, and Harper's motion for summary judgment is **granted**. The case remanded to the administrator to review Harper's claim for benefits anew in proceedings consistent with this opinion.

**IT IS SO ORDERED.**

*Geraldine Soat Brown*

GERALDINE SOAT BROWN
United States Magistrate Judge

DATED: May 8, 2008